Filed 8/25/22  In re Z.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Z.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078709 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J281647 & J281648) |
| v. | OPINION |
| C.H. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Conditionally reversed and remanded with directions.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant C.H.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

1

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

C.H. (father) and M.M. (mother) appeal the juvenile court's order terminating parental rights to their children Z.M. and T.H. (Welf. & Inst. Code,[1] § 366.26.) They contend the San Bernardino County Children and Family Services (CFS) failed to adequately inquire into whether the children are Indian children for purposes of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.), and that the court erred in ruling ICWA did not apply. CFS concedes error but argues that it was harmless. We agree with appellants and conditionally reverse the orders terminating parental rights and direct the juvenile court to ensure CFS complies with the notice provisions under ICWA and related California law.

## I. PROCEDURAL BACKGROUND AND FACTS[2]

T.H. was born in 2013 and Z.M. was born in 2016. On July 9, 2019, CFS initiated dependency proceedings pursuant to section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (g) (no provision for support), and (j) (abuse of sibling), based on mother's substance abuse and father's acts of domestic abuse. On July 10, both parents filed the required parental notification of Indian status forms (ICWA-020) and denied any Native American ancestry. The children were detained, supervised visitation was ordered, and a jurisdiction/disposition hearing was set.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] On March 28, 2022, this court ordered the record in *C.H. v. Superior Court* (*CFS*) (Apr. 13, 2021, E076669) incorporated in this case.

On August 29, 2019, the maternal aunt acknowledged her relationship with the children and denied any Native American ancestry on the maternal side of the family. Both parents submitted on the petition. At the jurisdiction/ disposition hearing held that same day, the juvenile court found father to be the presumed father of the children,[3] and that ICWA did not apply. The court sustained the allegations in the petitions, declared the children dependents of the court, removed them from their parents' custody, and ordered reunification services and supervised visitation.

The parents received several months of reunification services. Having failed to benefit from his services, father did not regain custody of the children; however, mother completed her case plan and, in March 2020, the children were returned to her under a family maintenance plan. Despite her progress, mother relapsed on drugs, and on February 1, 2021, CFS filed supplemental petitions. The parents were asked about, and again denied, any Native American heritage. The juvenile court re-removed the children, terminated parents' reunification services, and set a section 366.26 hearing. The children were placed in the home of a maternal cousin.

In July 2021, the maternal cousin asked that the children be removed from her home, and on the 31st, they were placed with their prior foster parents, Mr. and Mrs. C.,[4] who wanted to adopt them. The juvenile court ended visitation between the children and

---

[3] The parents married on July 24, 2015, and separated following the children's detention. While father financially supports Z.M. and treats her like his child, he is not her biological father. Mother identified three individuals who may be Z.M.'s biological father; CFS conducted an absent parent search for each.

[4] Mr. C.'s paternal grandfather is of the Cherokee tribe.

3

each parent (mother on June 23, 2021; father on Oct. 21, 2021) after finding visitation to be detrimental. On March 10, 2022, the court terminated parental rights and freed the children for adoption. Father and mother appealed.

## II. DISCUSSION

Both father and mother contend the juvenile court and CFS failed to satisfy their inquiry obligations under ICWA, and they ask that we remand the matter with directions for CFS to conduct "a proper inquiry" in "compliance with the ICWA and California law." We agree.

"'Congress enacted ICWA in 1978 in response to "rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes."' [Citations.] ICWA provides: '"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.' [Citations.] 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing

4

minimum federal standards a state court must follow before removing an Indian child from his or her family.' [Citations.]

"'"'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."'"' [Citations.] 'State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."' [Citations.]

"Section 224.2 '"'creates three distinct duties regarding ICWA in dependency proceedings."' [Citations.] *First*, *section 224.2*, *subdivision* (*b*), *requires the child protective agency to ask* 'the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, *whether the child is*, *or may be, an Indian child* and where the child, the parents, or Indian custodian is domiciled.' [Citations.] Although commonly referred to as the '*initial duty of inquiry*,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and *continues throughout the dependency proceedings*. [Citation.]

5

"Second, if the court or child protective agency 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citations.] Third, if the further inquiry ""results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply."" [Citations.]

"""The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.""" (*In re J.C.* (2022) 77 Cal.App.5th 70, 76-78 (*J.C.*), italics added.)

Here, CFS failed to fulfill its initial duty of inquiry into the children's possible Native American ancestry by gathering information from extended family members— some of whom were readily available—that could have triggered additional duties and heightened requirements. (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent, aunt or uncle, . . . first or second cousin. . . ."]; Welf. & Inst. Code, § 224.1, subd. (c) [same]; *J.C.*, *supra*, 77 Cal.App.5th at pp. 78-79.) Both parents point out that there were at least three other relatives who were active in the dependency: the maternal uncle, the maternal cousin, and another maternal aunt. Yet,

the record contains no evidence that the social worker interviewed and/or asked any of them about possible Native American ancestry or tribal affiliations. CFS's failure to ask these extended relatives about possible Native American ancestry "violated the express mandate of section 224.2, subdivision (b)." (*J.C.*, *supra*, 77 Cal.App.5th at p. 79.) Moreover, the juvenile court failed to carry out its duty to ensure that CFS adequately investigated the children's Native American ancestry by relying exclusively on the parents' and one maternal aunt's denial without inquiring into whether the social worker interviewed other relatives. (*Id.* at pp. 79-80.)

CFS concedes its failure to interview the additional maternal relatives, but argues harmless error since "both Mother, Father and the maternal aunt repeatedly denied Indian ancestry on multiple occasions." "To state [CFS'] argument is to expose its circular flaw: By failing to conduct an adequate inquiry, [CFS] virtually guarantees that the (incomplete) information it obtains will support a finding ICWA does not apply and that the juvenile court's error in failing to require [CFS] to comply with the law is harmless. Under [CFS's] theory, the less it complies with its duties to inquire under state and federal law, the more harmless is its erroneous failure to inquire. [¶] That's not how it works." (*J.C.*, *supra*, 77 Cal.App.5th at p. 80.) Rather, when the child protective agency fails to conduct an adequate inquiry, it is impossible for a parent to show prejudice. (*Ibid.*)

7

To summarize, CFS's failure "to obtain information that appears to have been both readily available and potentially meaningful" dictates a conditional reversal of the order terminating parental rights and remand for the limited purpose of ensuring a proper inquiry. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

## III. DISPOSITION

The orders terminating parental rights to Z.M. and T.H. are conditionally reversed. On remand, the juvenile court shall direct CFS to provide a supplemental report detailing what additional efforts it has taken to obtain information about the children's possible Indian ancestry, including the names and other relevant information of family members interviewed. The court shall then determine anew whether the ICWA inquiry was adequate.

If the juvenile court determines the additional inquiry was adequate, the order terminating parental rights shall immediately be reinstated, and further proceedings shall be conducted, as appropriate. In the alternative, if the court determines the additional inquiry was inadequate, it shall direct CFS to conduct further inquiry and, if necessary, provide notice to the relevant Indian tribes of any relevant information CFS might have received.

The juvenile court shall then determine whether the additional inquiry and notice are adequate. If, after receiving the notices, the relevant tribes do not respond or respond that the children are not Indian children within the meaning of ICWA, the order terminating parental rights shall immediately be reinstated, and further proceedings shall

be conducted, as appropriate.  If any tribe determines that the children are Indian children, the juvenile court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____

J.

We concur:

RAMIREZ _____

P. J.

SLOUGH _____

J.